## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 22-CV-1152-JAR** |
| **GARY A. DUNN, BARBARA A. DUNN, WEST PLAINS TRANSPORT, INC., STOCKGROWERS STATE BANK, BMO HARRIS BANK N.A., FIRST NATIONAL BANK OF LIBERAL, MEADE COUNTY TREASURER, and KANSAS DEPARTMENT OF REVENUE,** | |
| **Defendants.** | |

## MEMORANDUM AND ORDER

The Government brought this action against several Defendants to enforce federal tax liens.  The only remaining dispute in this case is whether Defendant BMO Harris Bank, N.A. ("BMO")[1] tortiously converted the tax liens when it repossessed and sold eight commercial vehicles, as alleged in Count X of the Amended Complaint.[2]  Before the Court are the Government's and BMO's Cross-Motions for Summary Judgment (Docs. 71, 72) on Count X. The motions are fully briefed, and the Court is prepared to rule.  As described more fully below,

---

[1] BMO indicated in a recent filing that it changed its name to BMO Bank, N.A. on September 3, 2023. Doc. 80 at 1 n.1.

[2] Defendants Stockgrowers State Bank, Gary A. Dunn, Barbara A. Dunn, and West Plains Transport, Inc. entered into stipulations with the Government for Judgment.  Docs. 57, 59.  On July 26, 2023, the Court entered Judgment in favor of the United States and against Defendant Stockgrowers State Bank on the lien-enforcement claims asserted against it in Counts VII, VIII, and XI of the Amended Complaint.  Doc. 58.  On August 21, 2023, the Court entered Judgment in favor of the United States and against taxpayer Defendants Gary A. Dunn, Barbara A. Dunn, and West Plains Transport, Inc. on Counts I through IX of the Amended Complaint.  Doc. 61.

Also pending before the Court is a Motion for Default Judgment against Defendants First National Bank of Liberal, the Meade County Treasurer, and the Kansas Department of Revenue.  Doc. 70.  The Court will rule on that motion in a separate order.

the Court grants BMO's motion for summary judgment and denies the Government's motion for summary judgment on Count X.

## I.        Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law.[3]  In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.[4]  "There is no genuine issue of material fact unless the evidence, construed in the light most favorable to the nonmoving party, is such that a reasonable jury could return a verdict for the nonmoving party."[5]  A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."[6]  An issue of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party."[7]

The moving party initially must show the absence of a genuine dispute of material fact and entitlement to judgment as a matter of law.[8]  Once the movant has met the initial burden of showing the absence of a genuine dispute of material fact, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."[9]  The nonmoving

---

[3] Fed. R. Civ. P. 56(a); *see also Grynberg v. Total*, 538 F.3d 1336, 1346 (10th Cir. 2008).

[4] *City of Harriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010).

[5] *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

[6] *Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[7] *Thomas v. Metro. Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[8] *Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir. 2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

[9] *Anderson*, 477 U.S. at 256; *Celotex*, 477 U.S. at 324; *Spaulding*, 279 F.3d at 904 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

party may not simply rest upon its pleadings to satisfy its burden.[10]  Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[11]  In setting forth these specific facts, the nonmovant must identify the facts "by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein."[12]  A nonmovant "cannot create a genuine issue of material fact with unsupported, conclusory allegations."[13]  A genuine issue of material facts must be supported by "more than a mere scintilla of evidence."[14]

To prevail on a motion for summary judgment on a claim upon which the moving party also bears the burden of proof at trial, the moving party must demonstrate "no reasonable trier of fact could find other than for the moving party."[15]  Where the parties file cross-motions for summary judgment, each party bears the burden of establishing that no genuine issue of material facts exists and there is no entitlement to judgment as a matter of law.[16]  "Cross motions for summary judgment are to be treated separately; the denial of one does not require the grant of another."[17]  But where, as here, the cross motions overlap, the Court may permissibly address the legal arguments together.[18]  Each motion is viewed in the light most favorable to the non-moving party.[19]

---

[10] *Anderson*, 477 U.S. at 256; *accord Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1017 (10th Cir. 2001).

[11] *Mitchell v. City of Moore*, 218 F.3d 1190, 1197–98 (10th Cir. 2000) (quoting *Adler*, 144 F.3d at 670–71).

[12] *Adler*, 144 F.3d at 671.

[13] *Tapia v. City of Albuquerque*, 170 F. App'x 529, 533 (10th Cir. 2006) (citing *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1237 (10th Cir. 2004)).

[14] *Black v. Baker Oil Tools, Inc.*, 107 F.3d 1457, 1460 (10th Cir. 1997).

[15] *Leone v. Owsley*, 810 F.3d 1149, 1153 (10th Cir. 2015).

[16] *See Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000).

[17] *Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979) (citation omitted).

[18] *Berges v. Standard Ins. Co.*, 704 F. Supp. 2d 1149, 1155 (D. Kan. 2010) (citation omitted).

[19] *Banner Bank v. First Am. Title Ins. Co.*, 916 F.3d 1323, 1326 (10th Cir. 2019).

Finally, summary judgment is not a "disfavored procedural shortcut;" on the contrary, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[20]  In responding to a motion for summary judgment, "a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial."[21]

## II.    Uncontroverted Facts

The following facts are either uncontroverted or stipulated by the parties.[22]

### *Federal Tax Liens*

Between February 11, 2013, and January 9, 2017, a delegate of the Secretary of the Treasury made assessments against Defendant West Plains Transport, Inc. ("West Plains") for unpaid Form 941 federal employment tax, interest, penalties, and fees for various tax periods in tax years 2012–2016.  The Internal Revenue Service ("IRS") gave West Plains notices of these unpaid assessments and made demands for payment on or about the date of each unpaid assessment.  Despite the notices and demands for payment, West Plains failed to pay its outstanding Form 941 federal employment tax liabilities in full.

For tax year 2015, on May 16, 2016, a delegate of the Secretary of the Treasury made assessments against West Plains Transport for unpaid Form 940 federal unemployment tax, interest, penalties, and fees.  The IRS gave West Plains notices of these unpaid assessments and made demands for payment on or about the date of each unpaid assessment.  Despite the notices and demands for payment, West Plains failed to pay its outstanding Form 940 federal unemployment tax liabilities in full.

---

[20] *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

[21] *Conaway v. Smith,* 853 F.2d 789, 794 (10th Cir. 1988).

[22] *See* Doc. 68 ¶¶ 2.a.1–25.

For tax years 2015 and 2016, on April 4, 2016, and September 26, 2016, respectively, a delegate of the Secretary of the Treasury made assessments against West Plains for unpaid Form 2290 heavy highway vehicle use tax, interest, penalties, and fees.  The IRS gave West Plains notices of these unpaid assessments and made demands for payment on or about the date of each unpaid assessment.  Despite the notices and demands for payment, West Plains failed to pay its outstanding Form 2290 heavy highway vehicle use tax liabilities in full.

As a result of the assessments made by a delegate of the Secretary of the Treasury against West Plains, the IRS sending notices of assessments and demands for payment to West Plains, the failure of West Plains to pay the assessed federal tax liabilities referred to above as set forth in the table below, and, pursuant to 26 U.S.C. §§ 6321 and 6322, federal tax liens arose in favor of the United States on the date of each of the assessments, in the amounts of the assessments plus all additions accruing thereon under law.[23]

These federal tax liens attached to all property and rights to property then belonging to West Plains, including its interest in the BMO Commercial Vehicles, and to all of its property and rights to property that came into existence thereafter as a matter of law.  On the dates, for the tax periods, and for the unpaid liabilities set forth below, the IRS filed notices of federal tax lien under 26 U.S.C. § 6323(f)(1)(A)(ii) with the Meade County, Kansas Register of Deeds:

| Filing Date | Taxpayer | Tax Type | Tax Period Ending |
|---|---|---|---|
| 08/26/2013 | West Plains | Employment Tax (Form 941) | 09/30/2012 |
| 08/26/2013 | West Plains | Employment Tax (Form 941) | 03/31/2013 |
| 12/17/2013 | West Plains | Employment Tax (Form 941) | 06/30/2013 |
| 06/30/2014 | West Plains | Employment Tax (Form 941) | 12/31/2013 |

---

[23] *See* Doc. 76-2 ¶¶ 10, 14, 18, 21; *see also* Docs. 76-3 through 76-13.

| Filing Date | Taxpayer | Tax Type | Tax Period Ending |
|---|---|---|---|
| 09/29/2014 | West Plains | Employment Tax (Form 941) | 03/31/2014 |
| 01/19/2016 | West Plains | Employment Tax (Form 941) | 06/30/2015 |
| 01/19/2016 | West Plains | Vehicle Tax (Form 2290) | 07/01/2015 |
| 06/13/2016 | West Plains | Employment Tax (Form 941) | 09/30/2015 |
| 08/29/2016 | West Plains | Unemployment Tax (Form 940) | 12/31/2015 |
| 12/06/2016 | West Plains | Employment Tax (Form 941) | 06/30/2016 |
| 12/06/2016 | West Plains | Vehicle Tax (Form 2290) | 07/01/2016 |
| 01/30/2017 | West Plains | Employment Tax (Form 941) | 03/31/2016 |
| 04/17/2017 | West Plains | Employment Tax (Form 941) | 09/30/2016 |
| 06/27/2017 | West Plains | Employment Tax (Form 941) | 03/31/2015 |

### *Commercial Vehicle Agreements with BMO*

BMO leased eight commercial vehicles to West Plains.  In 2018, West Plains desired to purchase the leased commercial vehicles, and BMO agreed to finance those purchases.  On March 7, 2018, BMO and West Plains entered into a Loan and Security Agreement (including any modifications and amendments thereto, the "First Agreement"), whereby BMO agreed to finance West Plains' purchase of the equipment described therein for use in West Plains' business, and West Plains agreed to pay BMO principal plus pre-computed interest in the amount of $488,918.76, under the terms and conditions stated therein.

Under the First Agreement, West Plains granted BMO a security interest in the following vehicles ("First Agreement Vehicles"):

| Year | Make | VIN |
|---|---|---|

| 2013 | Peterbilt | 1XPWD40X0DD181973 |
|------|-----------|-------------------|
| 2013 | Peterbilt | 1XPWD40X2DD181974 |
| 2013 | Peterbilt | 1XPWD40X4DD181975 |
| 2013 | Peterbilt | 1XPWD40X5DD181970 |
| 2013 | Peterbilt | 1XPWD40X7DD181971 |
| 2013 | Peterbilt | 1XPWD40X9DD181972 |

At the time that BMO and West Plains entered into the First Agreement, BMO was the title owner, but West Plains had possession of the First Agreement Vehicles.

On March 26, 2018, BMO sent paperwork to West Plains to complete and submit to the Kansas Department of Revenue ("KDOR") to effectuate the change of title of the First Agreement Vehicles from BMO to West Plains.  On May 1, 2018, the KDOR issued e-titles showing West Plains as the owner and BMO as the lienholder of the First Agreement Vehicles. At no time prior to May 1, 2018, did BMO mail or deliver a notice of security interest ("NOSI"), pursuant to K.S.A. § 8-135(c)(5), for any of the First Agreement Vehicles to the KDOR, Division of Vehicles ("Division").

On March 18, 2018, BMO and West Plains entered into another Loan and Security Agreement (including any modifications and amendments thereto, the "Second Agreement"), whereby BMO agreed to finance West Plains' purchase of the equipment described therein for use in West Plains' business, and West Plains agreed to pay BMO principal plus pre-computed interest in the amount of $92,850.24, under the terms and conditions stated therein.

Under the Second Agreement, West Plains granted BMO a security interest in the following vehicles ("Second Agreement Vehicles"):

| Year | Make | VIN |
|------|------|-----|
| 2012 | Peterbilt | 1XPHD49X1CD149611 |
| 2012 | Peterbilt | 1XPHD49X4CD149618 |

At the time that BMO and West Plains entered into the Second Agreement, BMO was the title owner, but West Plains had possession of the Second Agreement Vehicles.

On April 28, 2018, BMO sent paperwork to West Plains to complete and submit to the KDOR to effectuate the change of title of the Second Agreement Vehicles from BMO to West Plains.  On April 30, 2018, the KDOR issued e-titles showing West Plains as the owner and BMO as the lienholder of the Second Agreement Vehicles.  At no time prior to April 30, 2018, did BMO mail or deliver a NOSI, pursuant to K.S.A. § 8-135(c)(5), for any of the Second Agreement Vehicles to the Division.

West Plains defaulted on its obligations under both agreements by failing to make payments when due and owing.  BMO repossessed the First Agreement Vehicles and the Second Agreement Vehicles (collectively, "BMO Commercial Vehicles").  BMO, through its auction agent, disposed of the BMO Commercial Vehicles on the following dates and for the following amounts (collectively the "Proceeds"):

| Vehicle | Date of Disposition | Gross Proceeds | Net Proceeds |
|---------|---------------------|----------------|--------------|
| 1XPHD49X4CD149618 | 3/27/2020 | $ 8,750.00 | $ 7,039.17 |
| 1XPHD49X1CD149611 | 12/20/2019 | $ 22,000.00 | $ 18,306.78 |
| 1XPWD40X5DD181970 | 6/9/2020 | $ 14,000.00 | $ 12,815.00 |
| 1XPWD40X7DD181971 | 6/9/2020 | $ 19,000.00 | $ 16,688.00 |
| 1XPWD40X9DD181972 | 6/9/2020 | $ 15,500.00 | $ 14,195.00 |

| 1XPWD40X2DD181974 | 6/9/2020 | $ 16,000.00 | $ 13,973.00 |
| 1XPWD40X4DD181975 | 6/9/2020 | $ 6,250.00 | $ 5,685.00 |
| 1XPWD40X0DD181973 | 6/9/2020 | $ 7,500.00 | $ 6,835.00 |
| **TOTAL** | | **$ 109,000.00** | **$ 95,536.95** |

The net proceeds ($95,536.95) were applied on the outstanding amounts due under the First

Agreement and Second Agreement.  BMO spent $2850.20 refurbishing the BMO Commercial

Vehicles prior to their disposition.  The IRS did not contact BMO or otherwise attempt to stop

the sale.

## III.   Discussion

The only remaining claim in this action is Count X against BMO for conversion, in which

the Government asserts that BMO tortiously converted its federal tax liens when it sold the BMO

Commercial Vehicles at auction.  Under Kansas law, conversion is "the unauthorized assumption

or exercise of the right of ownership over goods or personal chattels belonging to another to the

exclusion of the other's rights."[24]  It is a strict liability tort; therefore, "[t]he required intent is

shown by the use or disposition of property belonging to another, and knowledge or ignorance as

to ownership of the property is irrelevant."[25]  The parties do not dispute the facts material to this

claim.  Instead, they dispute the priority of interests in the BMO Commercial Vehicles.  The

Government contends that the federal tax liens associated with West Plains' tax liabilities take

priority over BMO's interest in the BMO Commercial Vehicles because they arose before

---

[24] *Millennium Fin. Servs., LLC v. Thole*, 74 P.3d 57, 64 (Kan. Ct. App. 2003) (quoting *Gillespie v. Seymour*, 796 P.2d 1060, 1066 (Kan. Ct. App. 1990), *aff'd in part, rev'd in part on other grounds*, 823 P.2d 782 (Kan. 1991)).

[25] *Id.* (quoting *Commerce Bank, NA v. Chrysler Realty Corp.*, 76 F. Supp. 2d 1113, 1118 (D. Kan. 1999), *rev'd on other grounds*, 244 F.3d 777 (10th Cir. 2001)).

BMO's security interests in the BMO Commercial Vehicles became valid under Kansas law. BMO contends that the federal tax liens are subordinate to its valid purchase money security interests ("PMSI") in the BMO Commercial Vehicles.

### A.    The Government's Federal Tax Lien

A federal tax lien under 26 U.S.C. § 6321 arises when a delegate of the Secretary of Treasury makes an assessment against the taxpayer.[26]  It applies to "all property and rights to property, whether real or personal, belonging to" the taxpayer.[27]  And it continues "until the liability for the amount so assessed (or a judgment against taxpayer arising out of such liability) is satisfied or becomes unenforceable by reason of lapse of time."[28]  "A federal tax lien is perfected on the date of assessment."[29]  The Government has submitted proof of valid assessments for West Plains' tax liabilities, as summarized in the table included in the statement of uncontroverted facts.  There is no dispute that these liabilities were incurred during tax periods 2015 and 2016, and that the IRS filed notices of federal tax lien under 26 U.S.C. § 6323(f)(1)(A)(ii) with the Meade County, Kansas Register of Deeds for each one on the dates in the table included in the uncontroverted facts discussed above.

### B.    BMO's Security Interests

Commercial transactions in Kansas, such as those between West Plains and BMO, are governed by the Kansas Uniform Commercial Code ("UCC").[30]  Article 9 governs "secured transactions and the creation, attachment, perfection, priority, and enforcement of a security

---

[26] 26 U.S.C. § 6322; *Gardner v. United States*, 34 F.3d 985, 987 (10th Cir. 1994).

[27] 26 U.S.C. § 6321.

[28] *Id.* § 6322.

[29] *Eskanos v. Alpha 76, Inc.*, 712 F. Supp. 819, 822 (D. Colo. 1989) (citing *Sgro v. United States*, 609 F.2d 1259, 1261 (7th Cir.1979)).

[30] K.S.A. §§ 84-1-101 through 84-9-809 [hereinafter "UCC § X-XXX"].

interest."[31]  "A security interest attaches to collateral when it becomes enforceable against the debtor,"[32] which entails the following:

> the secured party must give value to the debtor, the debtor must acquire legal rights in the collateral or the power to transfer rights in the collateral to a secured party, and the debtor must authenticate a security agreement that provides a description of the collateral.  Upon default of the underlying debt, a secured creditor is entitled to take possession and dispose of the collateral.[33]

There is no dispute that BMO's security interest the First Agreement Vehicles attached on March 7, 2018, and attached on the Second Agreement Vehicles on March 18, 2018.

In order to protect its security interests against third parties who claim a security interest in the same collateral, BMO was required under Article 9 to "perfect" them.[34]  The secured transactions in this case were PMSIs because West Plains purchased the secured collateral (the BMO Commercial Vehicles) with money provided by BMO for that purpose.[35]  "A purchase money security interest ordinarily is deemed perfected at the time it attaches to the collateral."[36] An exception applies, however, when the PMSI "is subject to any certificate-of-title law in Kansas, including automobiles."[37]  Under this exception, the PMSI "will not be perfected upon attachment but instead can be perfected only by compliance with K.S.A. Supp. 8-135(c)(5), the Kansas statute applicable to certificates of title and security interests in motor vehicles."[38]

Under K.S.A. § 8-135(c)(5):

---

[31] *Stanley Bank v. Parish*, 264 P.3d 491, 494 (Kan. Ct. App. 2011) (citing UCC § 9-101 through -809).

[32] *Id.*

[33] *Id.* (first citing UCC § 9-203(a)–(b); and then citing UCC § 9-609).

[34] *Id.*

[35] *See* UCC §§ 9-103(b)(1), -309(1), -310(b)(2).

[36] *Stanley Bank*, 264 P.3d at 494 (citing UCC § 9-309).

[37] *Id.*

[38] *Id.* (citing UCC § 9-311(a)(2)).

> [U]pon sale and delivery to the purchaser of every vehicle subject
> to a purchase money security interest as provided in article 9 of
> chapter 84 of the Kansas Statutes Annotated, and amendments
> thereto, the dealer or secured party may complete a notice of
> security interest and when so completed, the purchaser shall
> execute the notice, in a form prescribed by the division, describing
> the vehicle and showing the name and address of the secured party
> and of the debtor and other information the division requires. . . .
> The dealer or secured party, within 30 days of the sale and
> delivery, *may* mail or deliver the notice of security interest,
> together with a fee of $2.50, to the division. . . . The proper
> completion and timely mailing or delivery of a notice of security
> interest by a dealer or secured party shall perfect a security interest
> in the vehicle, as referenced in K.S.A. 84-9-311, and amendments
> thereto, on the date of such mailing or delivery. The county
> treasurers shall mail a copy of the title application to the
> lienholder. . . .[39]

As the United States Bankruptcy Court for the District of Kansas recently explained: "Under the current version of § 8-135 . . . a secured party perfects its interest in a vehicle upon the 'mailing or delivery' of the required documents and fee as provided under § 8-135(c)(5) or (c)(6).  Under both provisions, the key event for perfection is delivery of the respective documentation and fee."[40]

In sum, the secured creditor has two options under Kansas law to perfect a vehicle:

> First and foremost, Kansas law provides that a purchase money
> security interest in an automobile held by a secured creditor is
> perfected when the certificate of title issues with the lien noted
> thereon.  Secondly, and because purchasers do not always register
> and title their vehicles in a timely manner, Kansas law affords a
> secured creditor the opportunity to perfect its purchase money
> security interest during the interim time period between purchase
> and issuance of a certificate of title by timely mailing or delivering
> a formal notice of security interest, along with the applicable fee,
> to the Division.[41]

---

[39] K.S.A. § 8-135(c)(5) (emphasis added).

[40] *In re Anstaett*, 651 B.R. 911, 917 (Bankr. D. Kan. 2023) (footnotes and citations omitted).

[41] *Stanley Bank*, 264 P.3d at 495; *see also In re Hoffman*, 500 B.R. 37, 40 (Bankr. D. Kan. 2013) (setting forth two methods for perfection).

The record reflects that BMO did not avail itself of the second perfection option under K.S.A. § 8-135(c)(5) by timely mailing or delivering a formal NOSI, along with the applicable fee, to the Division.  Instead, BMO sent West Plains the title paperwork and relied on it to facilitate the title change, and the PMSIs were perfected when West Plains delivered the paperwork necessary for the Division to issue the certificates of title with the liens noted thereon.[42]  There is no dispute that on May 1, 2018, the Kansas Department of Revenue issued e-titles showing West Plains as the owner and BMO as the lienholder of the First Agreement Vehicles.  Nor is there a dispute that on April 30, 2018, the Kansas Department of Revenue issued e-titles showing West Plains as the owner and BMO as the lienholder of the Second Agreement Vehicles.  Therefore, the PMSIs on the First Agreement Vehicles perfected sometime before May 1, 2018, and on the Second Agreement Vehicles sometime before April 30, 2018, when the documentation and fees were mailed or delivered.

## C.    Priority

Having determined the competing interests in the BMO Commercial Vehicles, the Court next addresses priority between BMO's perfected PMSIs and the Government's earlier-filed federal tax liens.  The Federal Tax Lien Act of 1966 governs "the rights of private creditors with respect to a federal tax lien."[43]  The general rule under the Act is "the first in time is the first in right."[44]  Under this general rule, the federal tax liens would have priority because they were filed well before the BMO's PMSIs attached.  But, under 26 U.S.C. § 6323(b), even though a

---

[42] UCC § 9-311(b); K.S.A. § 8-135(b).

[43] *Sgro v. United States*, 609 F.2d 1259, 1261 (7th Cir. 1979).

[44] *United States ex rel. IRS v. McDermott*, 507 U.S. 447, 449 (1993) (quoting *United States v. New Britain*, 347y U.S. 81. 85 (1981)); *Sgro*, 609 F.3d at 1261.

notice of federal tax lien has been filed, certain interests are protected and have a "super priority" even though arising later in time.  As the Supreme Court has explained:

> [T]he Code specifically subordinates tax liens to the interests of certain others in the property, generally including those with a perfected security interest in the property.  For example, the Code and established decisional principles subordinate the tax lien to perfected security interests arising before the filing of the tax lien, to certain perfected security interests in certain collateral, including inventory, arising after the tax lien filing when pursuant to a security agreement entered into before the filing, and to collateral which is the subject of a purchases-money mortgage regardless of whether the agreement was entered into before or after filing of the tax lien.  As a consequence, secured parties often will have interests in certain proceeds superior to the tax lien . . . .[45]

There is no provision in § 6323(b) explicitly protecting PMSIs other than purchase-money mortgages.  Nonetheless, BMO offers several arguments in favor of its position that its perfected PMSIs are superior to the federal tax liens in the vehicles, despite attaching and being perfected well after the federal tax liens were filed.

### 1.  *Slodov v. United States*

First, BMO contends that the Supreme Court's decision in *Slodov v. United States* supports its position that tax liens are subordinate to "interests in property with a purchase money security character."[46]  The Government argues that BMO mischaracterizes *Slodov* and its discussion about the UCC's perfection procedures.  But several courts, including the Tenth Circuit, have relied on the language quoted above to support "[t]he general proposition . . . that a security interest based on the extension of purchase money defeats a previously filed federal tax lien."[47]  The Court finds this to be persuasive authority for BMO's priority argument.

---

[45] *Slodov v. United States*, 436 U.S. 238, 256–58 (1978) (footnotes omitted).

[46] Doc. 84 at 2.

[47] *First Interstate Bank v. Comm'r*, 930 F.2d 1521, 1523 (10th Cir. 1991) (citing *Slodov*, 436 U.S. at 257–58); *see also Citizens State Bank & Trust Co. v. Motor Serv. Co.*, 902 F. Supp. 1435, 1438 (D. Kan. 1995) (directing

### 2.      Revenue Ruling 68-57

BMO also relies on IRS Revenue Ruling 68-57 (the "Revenue Ruling"), cited in a

footnote in *Slodov*.[48]  That revenue ruling provides:

> The Federal Tax Lien Act of 1966, P.L. 89-719, C.B. 1966-2, 623,
> does not refer to a purchase money security interest or mortgage.
> However, the General Explanation of the Act, as set forth in House
> of Representatives Report No. 1884, C.B. 1966-2, at page 817,
> states as follows:
>> Although so-called purchase money mortgages are not
>> specifically referred to under present law, it has generally
>> been held that these interests are protected whenever they
>> arise. This is based upon the concept that the taxpayer has
>> acquired property or a right to property only to the extent that
>> the value of the whole property or right exceeds the amount of
>> the purchase money mortgage. This concept is not affected by
>> the bill.
>
> In view of the legislative history of the Federal Tax Lien Act of
> 1966, the Internal Revenue Service will consider that a purchase
> money security interest or mortgage valid under local law is
> protected even though it may arise after a notice of Federal tax lien
> has been filed.[49]

BMO argues that it had valid PMSIs in the BMO Commercial Vehicles under Kansas law, which

under the plain language of the Revenue Ruling are protected against federal tax liens even when

they arise after the notice of federal tax lien.  The Government responds that this Revenue Ruling

is not binding on the Court, and that even if it was, BMO was required to timely perfect its

PMSIs under Kansas law in order to take priority, but failed to do so.  As described below, the

Court agrees with BMO that its PMSIs in the vehicle are protected against the federal tax liens

under this Revenue Ruling.

---

the parties to file supplemental briefing addressing, *inter alia*, why a lender does not have priority over a federal tax lien if it has a PMSI in the inventory based in part on *Slodov*); *In re United States v. Specialty Contracting & Supply, Inc.*, 140 B.R. 922, 925 (Bankr. N.D. Ga. 1992) (characterizing *Slodov* as "recogniz[ing] that a purchase money security interest is entitled to priority over a previously filed federal tax lien").

[48] *Slodov*, 436 U.S. at n.23 (citing Rev. Rul. 68-57) (other citations omitted).

[49] Rev. Ruling 68-57, 1968-1 C.B. 553.

### a. Weight

Oddly, the IRS first takes the position in this case that its own revenue ruling should not be applied. As an initial matter, the Court acknowledges that this revenue ruling is not binding precedent.[50] As the Tenth Circuit explains, "[r]evenue rulings do not have the force and effect of law, but rather are offered for the guidance of taxpayers, IRS officials, and others concerned."[51] Moreover, while revenue rulings "are entitled to some consideration, they do not control when contrary to statute or the expressed intention of Congress."[52]

The Court does not find that the Revenue Ruling conflicts with the Code or Congress's intent, and therefore considers it here in the absence of authority to the contrary. The Code is silent as to priority between a PMSI and federal tax lien. The revenue ruling was written to fill that gap and further the intent of Congress given the statement in the House Report that the bill does not affect the general proposition that a PMSI is protected based on the concept that "the taxpayer has acquired property or a right to property only to the extent that the value of the whole property or right exceeds the amount of the purchase money mortgage."[53] The decision is also consistent with *Slodov* and cases that have subsequently relied on that decision.[54]

---

[50] *Fulghum v. Embarq Corp.*, 785 F.3d 395, 408 (10th Cir. 2015) (quoting *ABC Rentals of San Antonio, Inc. v. Comm'r*, 142 F.3d 1200, 1205 (10th Cir. 1998)).

[51] *Id.* (quoting *True Oil Co. v. Comm'r*, 170 F.3d 1294, 1304 (10th Cir. 1999)); *see* Internal Revenue Manual 5.17.2.6.5.11 (Mar. 19, 2018) ("While the Internal Revenue Code does not give a PMSI priority status, pursuant to Rev. Rul. 68-57, 1968-1 C.B. 553, the Service recognizes that a PMSI will have priority over the Service's NFTL if the PMSI is valid under local law. . . .  State law must be checked to determine whether a valid PMSI exists.").

[52] *True Oil Co.*, 170 F.3d at 1304 (quoting *Storm Plastics, Inc. v. United States*, 770 F.2d 148, 154 (10th Cir. 1985)).

[53] Rev. Ruling 68-57, 1968-1 C.B. 553; *see also Nat'l Bank of Marlton v. Coxson*, No. 347-73, 1976 WL 1034, at *5 (D.N.J. May 11, 1976) ("[T]he Commissioner of Internal Revenue intended the Ruling to set forth only the agency's interpretation of the intent of Congress stated in the House Report. The most reasonable assessment of the last sentence . . . is that the [IRS] will read § 6323(a) as including purchase money security interests among the interests entitled to conditional priority over federal tax liens." (footnote omitted)).

[54] *First Interstate Bank v. Comm'r*, 930 F.2d 1521, 1523 (10th Cir. 1991) (citing *Slodov v. United States*, 436 U.S. 238, 257–58 (1978)); *Citizens State Bank & Trust Co. v. Motor Serv. Co.*, 962 F. Supp. 1435, 1438 (D. Kan. 1995); *In re United States v. Specialty Contracting & Supply, Inc.*, 140 B.R. 922, 925 (Bankr. N.D. Ga. 1992);

### b.       Interpretation and Application

BMO contends that the Revenue Ruling protects its PMSIs in the BMO Commercial Vehicles because they are "valid under local law," a standard that does not equate to perfection. The Government argues that BMO misinterprets the revenue ruling as applying to unperfected PMSIs and that whether a PMSI is "valid under local law" under the Revenue Ruling is determined by reference to the UCC's perfection requirements.  Specifically, the Government argues that "valid under local law" requires not just perfection, but "timely" perfection under Kansas law either by (1) filing notices of security interest within thirty days of transfer under K.S.A. § 8-135(c)(5); or (2) the issuance of certificates of title within twenty days of West Plains receiving possession of the collateral under K.S.A. § 84-9-324(a).  The Government contends that BMO did not perfect its PMSIs within the time provided under either provision, so they were not "valid under local law," as required by the Revenue Ruling.

The Court does not resolve whether "valid under local law" as used in the Revenue Ruling requires perfection because the stipulated facts establish that BMO's PMSIs were perfected under Kansas law at the time it sold the BMO Commercial Vehicles at auction in 2020.[55]  There appears to be no dispute that BMO's PMSIs were perfected because the certificates of title issued with BMO's liens noted thereon.[56]  Perfection of these PMSIs was governed by UCC § 9-311: "Such security interest shall be deemed perfected upon the mailing or

---

*Bednarowski & Michaels Dev., LLC v. Wallace*, 293 F. Supp. 2d 728, 733 (E.D. Mich. 2003) (quoting *Slodov*, 436 U.S. at 258 n.23.).

[55] *Compare United States v. Heptner*, No. 15-CV-1125, 2016 WL 3344564, at *6 (M.D. Fla. June 15, 2016) ("The applicable revenue ruling and other decisional law require that a purchase money mortgage be 'valid' and do not mention or require 'perfection.' (citation omitted)) *with United States v. Crissman*, No. 09-CV-1884, 2011 WL 5374573, at *2 (M.D. Pa. Nov. 4, 2011) (interpreting revenue ruling as providing "purchase money mortgages only have priority against federal tax liens to the extent that they are perfected or are valid under local law").

[56] Indeed, the Government never contends that the PMSIs did not attach, or were not perfected.  It argues only that they were not timely perfected.  *See, e.g.*, Doc. 76 at 17; Doc. 79 at 16; Doc. 83 at 4.

delivery of the notice of security interest and tender of the required fee to the appropriate state agency as prescribed by subsection (c)(5) of K.S.A. 8-135 and subsection (g) of 58-4204 . . . ." As the Court has already discussed, K.S.A. § 8-135(c)(5) in turn provides that perfection occurs "when the certificate of title issues with the lien noted thereon."[57] The certificates of title in this case issued on April 30 and May 1, 2018, respectively.[58]

The Court does not find that either time limit cited by the Government created a deadline by which BMO was required to perfect in order to take priority under the revenue ruling. The certificate-of-title statute permits, but does not require, a secured creditor to perfect its PMSI "during the interim time period between purchase and issuance . . . by timely mailing or delivering a formal notice of security interest."[59] The Government is simply mistaken that this second option is required, or defines a time limit for perfection or validity under Kansas law. The Government relies on the following language from the Tenth Circuit's decision in *Matter of Kerr* to support its position: "When the law provides a simple and inexpensive way to protect the lien the creditor should be required to use it, *if the creditor desires protection against failure of the debtor to register the car in Kansas*."[60] But this case does not stand for the proposition that a creditor is required to follow the optional process of filing a NOSI to protect it during the interim period between transfer of the collateral and the issuance of certificates of title. Instead, it stands

---

[57] *Stanley Bank v. Parish*, 264 P.3d 491, 495 (Kan. Ct. App. 2011).

[58] There is no evidence about the date on which West Plains mailed or delivered the certificate of title applications to the Division of Vehicles.

[59] *Stanley Bank*, 264 P.3d at 495; *In re Hoffman*, 500 B.R. 37, 41 (Bankr. D. Kan. 2013) ("[W]hile filing such a NOSI seems like a good practice by a lender, it is not required for perfection. Even the pertinent statute dealing with filing of such NOSIs indicates such filings are discretionary by stating 'the dealer or secured party *may* complete' a NOSI." (quoting K.S.A. § 58–4204(g))); *Matter of Kerr*, 598 F.2d 1206, 1208 (10th Cir. 1979) ("The legislature perceived a hole in the statutory scheme whereby, contrary to the general philosophy of the UCC, the lender would be dependent upon acts of the borrower to perfect its lien. The legislature took steps to provide a simplified method whereby the lender would not be subject to that risk, if it filed a brief form and paid a nominal fee.").

[60] 598 F.2d at 1209 (emphasis added).

for the proposition that *if* the creditor wants to be protected from the risk of the purchaser failing to register the vehicle, it must follow that optional process.  It gives the creditor the option of initiating the perfection documents itself instead of waiting on the purchaser to mail or deliver the requisite documents to the Division.

Here, BMO apparently did not seek to avail itself of this option, at the risk of not being protected if West Plains failed to register the vehicles, or failed to register them before a competing security interest arose.  Unlike in *Kerr*, West Plains *did* ultimately register the vehicles and the certificates of titles issued noting the liens within sixty days of transfer.  While BMO was not protected during that interim period, its risk in relying on West Plains ultimately paid off and the certificates of title issued showing it as the only lienholder.  To be sure, if the Revenue Ruling is construed to require perfection and the facts of this case were that BMO sold the vehicles at auction between the time of transfer to West Plains and delivery of the applications for certificates of title, they would not have been perfected at that time and BMO would not have priority.[61]  But that is not the factual scenario here.  In 2019 and 2020, when BMO sold the BMO Commercial Vehicles at auction due to West Plains' default, it held perfected PMSIs in the collateral because the certificates of title had issued showing the liens, as required by Kansas law.

The Government's reliance on the twenty-day provision in UCC § 9-324(a) is also unavailing.  That provision governs the general rule of priority for PMSIs:

---

[61] *Id.* ("Under the UCC, the bank might be deemed to have an unperfected security interest prior to notation of the lien on the title, thus endangering the bank's security interest.  In order to protect the bank during this interim, the legislature amended the certificate of title act to provide that the consumer may execute a 'notice of security interest' form prepared by the dealer or secured party. This form is mailed to the Motor Vehicle Department with a fee of $1 to insure protection until the title with the lien noted thereon is applied for and issued. The effect is to give the secured party perfection on the vehicle upon mailing or delivery of the 'notice of security interest.'  With this amendment, lenders can breathe a deep sigh of relief." (quoting Clark, The New UCC Article 9 Amendments, 44 J.K.B.A. 131, 178 (1975))).

> Except as otherwise provided in subsection (g), a perfected
> purchase-money security interest in goods other than inventory or
> livestock has priority over a conflicting security interest in the
> same goods, and, except as otherwise provided in K.S.A. 84-9-327,
> and amendments thereto, a perfected security interest in its
> identifiable proceeds also has priority, if the purchase-money
> security interest is perfected when the debtor receives possession
> of the collateral or within 20 days thereafter.

But, as the Court has already explained, federal law governs priority when one of the competing interests is a federal tax lien.[62]  To the extent federal law incorporates Kansas law for purposes of determining attachment and perfection rules for BMO's PMSIs, it does not incorporate its priority rules.[63]  Section 9-324(a) applies to priority disputes between competing secured creditors, but there is no authority to support that it applies here in a priority dispute with a federal tax lien.  Instead, the Court follows *Slodov* and the Revenue Ruling.

In sum, the Court concludes that under federal law, a PMSI that is "valid under local law" takes priority over a previously-filed federal tax lien under *Slodov* and Revenue Ruling 68-57. Even if "valid" means "perfected," BMO's interests in the BMO Commercial Vehicles take priority because they were perfected PMSIs under Kansas law at the time BMO sold them at auction.  Therefore, the Government fails to demonstrate that it is entitled to judgment as a matter of law on its conversion claim, which requires it to show "the unauthorized assumption or exercise of the right of ownership over goods or personal chattels belonging to another to the exclusion of the other's rights."[64]  And BMO meets its summary judgment burden of identifying

---

[62] *See, e.g.*, *Sgro v. United States*, 609 F.2d 1259, 1260–61 (7th Cir. 1979) (collecting cases); *Bednarowski & Michaels Dev., LLC v. Wallace*, 293 F. Supp. 2d 728, 732 (E.D. Mich. 2003) (citations omitted) ("[S]tate law dictates the existence of property interests, but the priority of those interests with respect to tax liens or other portions of the tax law is an issue of federal law.").

[63] *See id.  But see Nat'l Bank of Marlton v. Coxson*, No. 347-73, 1976 WL 1034, at *5 (D.N.J. May 11, 1976) (construing the Revenue Ruling as including a requirement that the PMSI must be filed within ten days under a prior version of the general PMSI priority statute, UCC § 9-312(4)).

[64] *Millennium Fin. Servs., L.L.C. v. Thole*, 74 P.3d 57, 64 (Kan. Ct. App. 2003) (quoting *Gillespie v. Seymour*, 796 P.2d 1060, 1066 (1990), *aff'd in part, rev'd in part on other grounds*, 823 P.2d 782 (Kan. 1991)).

no genuine issues of material fact about whether it had perfected PMSIs in the collateral that took priority over the federal tax liens and that it is entitled to judgment as a matter of law on Count X.

   **IT IS THEREFORE ORDERED BY THE COURT** that BMO Bank N.A.'s Motion for Summary Judgment (Doc. 71) is **granted**; the Government's Motion for Summary Judgment on Count X of the Amended Complaint (Doc. 75) is **denied**.

   **IT IS SO ORDERED.**

   Dated: December 12, 2023

            S/ Julie A. Robinson
            JULIE A. ROBINSON
            UNITED STATES DISTRICT JUDGE